Rachel MOORE, et al.,
Plaintiffs–Appellants,

v.

**MISSISSIPPI VALLEY STATE UNIVERSITY, et al., Defendants–Appellees.**

No. 87–4830.

United States Court of Appeals,
Fifth Circuit.

May 1, 1989.

Willie J. Perkins, Sr., Greenwood, Miss., Leonard McClellan, Oxford, Miss., for plaintiffs-appellants.

Rickey T. Moore, Sp. Asst. Atty. Gen., Gail W. Lowery, Jackson, Miss., John Hensen, Greenwood, Miss., for defendants-appellees.

Before CLARK, Chief Judge,
BROWN, and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Four former employees of Threadgill Day Care Center in Greenwood, Mississippi filed suit under 42 U.S.C. § 1983, against Mississippi State Valley University, the sponsor of the Center, and against the Center's Board of Directors. The employees alleged that they lost their jobs in violation of their First and Fourteenth Amendment rights and that the University and Board are not shielded by the Eleventh Amendment. We are not persuaded by their argument and affirm the decision of the trial court below.

## I. *Background*

Threadgill Day Care Center of Greenwood, Mississippi, (Threadgill) employed, among others, Mrs. Rachel Moore, Aide (Moore), Mrs. Ferrydine Peoples, Aide (Peoples), Mrs. Leola Porter, Aide (Porter), and Mrs. Dorothy Williams–Anthony, Teacher (Williams–Anthony). This case is a dispute between these four employees of Threadgill and Threadgill's director and supervisory board.

For purposes of funding under Title XX, 42 U.S.C. § 1397 et seq., Threadgill operated under the sponsorship of the Greenwood Housing Authority (Greenwood) during the 1982–83 school year. The four employees were each employed on yearly contracts. Each of the 1982–83 contracts expired on September 30, 1983.

In May or June of 1983, Greenwood decided to relinquish its sponsorship of Threadgill. Threadgill approached Mississippi Valley State University (MVSU) in July 1983 for sponsorship. MVSU agreed to assume sponsorship for one fiscal year starting October 1, 1983.

In August 1983, a new governing board (the Board) was appointed comprising three faculty members from MVSU and two persons from the Greenwood Community at large.[1]

At its first meeting, August 3, 1983, the new Board prepared for the changeover from Greenwood sponsorship. The Board decided to give current Threadgill employees "first choice" of open positions. These employees submitted applications, resumes and references for review by the Board.

On September 15, 1983, all applicants, including plaintiffs, appeared before the Board for brief interviews. At that same meeting the Director, Jeanette Coleman (Coleman), made employment recommendations to the Board. Later that evening, the Board made its final decisions.

The meeting minutes show that Moore and Peoples were not recommended for re-employment as Aides. Porter was retained as an Aide but was put on 30 days probation for, among other things, insubordination and refusal to follow orders. Williams–Anthony was reduced from Teacher to Aide due to a lack of qualifications.

Each of the four were notified by mail of the Board's decision. The reasons for the Board's decision were not stated nor did the letters apprise plaintiffs of any opportunity for a hearing. The four employees subsequently made a formal request for a hearing and an explanation of the Board decisions. The request was not granted.

On November 20, 1983, the four employees filed a § 1983 suit against MVSU, the Board, Greenwood, Coleman and certain other named individuals claiming that their employment status was terminated or changed in violation of the Fourteenth Amendment[2] and in retaliation for a valid exercise of their First Amendment rights.[3]

---

1. MVSU, however, did not officially take over until October 1, 1983 when Greenwood's sponsorship ended.

2. The Fourteenth Amendment issue is based on (i) a liberty interest claim, and (ii) a deprivation of property interest claim.

3. The First Amendment claim stems from an incident in April of 1983 when the four employ-

The trial court on April 16, 1985, granted summary judgment on behalf of MVSU, the Board and Coleman in regards to the appellants' liberty interest claims and dismissed with prejudice the claim against Greenwood and the members of the Greenwood-sponsored board. A non-jury trial was conducted on August 13–14, 1987 regarding the remaining claims.

At trial, Moore, representing the four employees collectively, offered into evidence the deposition of Patrick Lewis (Lewis). Lewis, executive director of Greenwood while it sponsored Threadgill, had been a defendant in the case along with MVSU until the April 16, 1986 dismissal by the trial court. Lewis was deposed by Moore's attorney on March 7, 1984.[4]

Moore listed Lewis as one of her witnesses in the pre-trial order filed on September 23, 1985, but he was never called by Moore. Instead, during the trial on August 13, 1987, while Williams–Anthony was testifying, Moore's attorney sought to have her read the contents of the Lewis deposition into the record. MVSU objected and Moore's attorney responded that the document was offered to refresh Williams–Anthony's memory. Moore's attorney also claimed, without elaborating the details, that an attempt had been made to subpoena Lewis. The trial court subsequently allowed the document to be used to refresh Williams–Anthony's memory but ordered that it not be read into evidence.[5]

On August 31, 1987, the trial court found in favor of MVSU and dismissed the complaint. The four employees appealed.

Answering the collective contentions of the four, we must consider (i) whether each was deprived of either a valid liberty interest or a deprivation of property interest under the Fourteenth Amendment, (ii) whether Moore and Peoples were discharged, whether Williams–Anthony was demoted and whether Porter was put on probation in retaliation for the valid exercise of their First Amendment rights, and (iii) whether the trial court erred in excluding the Lewis deposition.

## II. *The Fourteenth Amendment Claims*

In alleging an unconstitutional denial of public employment in a § 1983 action after an employee has been fired, a threshold requirement is that the plaintiff demonstrate either a liberty or a property interest in her public employment. Without such an interest in public employment, no right to due process accrues.

### a. *Give Me Liberty or . . .*

Moore appeals the summary judgment granted by the trial court on the liberty interest claim. We find no error in the trial court's decision.[6]

In reviewing a grant of summary judgment by a trial court, we examine the record under the same standards as used by the trial court. *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.,* 832 F.2d 1358, 1364 (5th Cir.1987); *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). Affirmance of a summary judgment ruling requires that "we [be] convinced, after an independent review of the record, that 'there is no genuine issue as to any materi-

---

ees prepared a list of grievances. They complained about (i) the way Coleman treated them and the manner in which she conducted herself, (ii) about working uncompensated overtime (Tr. 119), (iii) about another staff member, Lena Davis (Davis) who on one occasion brought a gun to the center (Tr. 117–118) and (iv) about Davis paddling a child although employees of the center were not supposed to do so (Tr. 120).

**4.** MVSU's attorneys were served notice of the deposition on March 1, 1984. Lewis' own attorney was present at the deposition but MVSU was not represented.

**5.** The deposition was proffered to the trial court. Tr. 130–32.

**6.** Moore is the only plaintiff who conceivably made a liberty interest claim based on the denial of subsequent employment as she alone presented some claim at the summary judgment phase of the proceedings that she had, in fact, been denied subsequent employment because of the dissemination of information regarding her discharge at Threadgill. Porter and Williams–Anthony make no cognizable argument on appeal that they were deprived of future employment, and hence, a liberty interest.

al fact' and the movant is 'entitled to a judgment as a matter of law.'" *Brooks*, 832 F.2d at 1364 (quoting Fed.R.Civ.P. 56(c)). Consequently, we must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid*, 784 F.2d at 578, and decide all questions of law outside the summary judgment context by *de novo* review. *Brooks*, 832 F.2d at 1364. Finally, we are bound in our review of the granting of summary judgment by the record as it existed at the time summary judgment was granted. *Gulf Union Industries, Inc. v. Formation Sec., Inc.*, 842 F.2d 762, 765 (5th Cir.1988); *DeBardeleben v. Cummings*, 453 F.2d 320 (5th Cir. 1972).

■ In inquiring whether Moore was deprived of a protected liberty interest without due process, in the context of public employment, we recognize that a public employee has the right to be free from charges by the state that publicly compromise her good name, reputation, honor or integrity, unless she is afforded notice and an opportunity to refute those charges. *Board of Regents v. Roth*, 408 U.S. 564, 572–75, 92 S.Ct. 2701, 2706–08, 33 L.Ed.2d 548, 558–59 (1972). In order to establish the deprivation of a liberty interest, the employee may show either that she was terminated without notice and an opportunity to be heard for a reason which was (i) false, (ii) stigmatizing and (iii) published, *Huffstutler v. Bergland*, 607 F.2d 1090, 1092 (5th Cir.1979), or that she was denied other employment opportunities by the state as a result of a stigmatizing termination, for which she did not receive prior notice and a name clearing hearing. *Board of Regents v. Roth*, 408 U.S. at 573–74, 92 S.Ct. at 2707.

■ When the trial court granted summary judgment on the liberty interest claim in April 1985 it found that such judgment was appropriate because Moore failed to meet the *Huffstutler* standard. The trial court found that no representations of dis-

honesty or immorality were made against any of the plaintiffs nor were there any other charges that could be stigmatizing to any of the plaintiffs. The trial court also found that the changes and terminations of employment status had not been made "public" by any of the defendants and that the decision had only been made known in the workplace. This absence of "publication" must mean, consequently, that Moore could not have been denied subsequent employment opportunities due to the dissemination by the Board or Coleman of information about her discharge at Threadgill.

On review, we conclude for these reasons that Moore's liberty interest claim properly failed on summary judgment. Also we find that Moore failed to state that she was denied a subsequent employment opportunity because of her termination at Threadgill.

■ Moore did not state in a supporting affidavit offered in opposition to summary judgment on the liberty interest claim that she had been fired from a subsequent teaching position. The most she stated was that her new employer had had an opportunity for contact with Threadgill staff.[7] There were no statements from which the factfinder could reasonably infer that she was fired from the second teaching position as a result of release of information regarding her termination at Threadgill. Although inferences favorable to the non-movant must be accepted in a motion for summary judgment, summary judgment is nonetheless appropriate against a party who fails to make a showing sufficient to establish an element essential to the party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). *Celotex* requires that the party who bears the burden of proof at trial on a dispositive issue must "go beyond the pleadings and by her own affidavits ... designate 'specific facts showing that there

---

7. Moore offered her own affidavit in which she stated (i) she had been offered employment at a private school in the Greenwood area, (ii) she had attended a meeting at that school the weekend prior to starting work, (iii) an employee of

Threadgill and a member of the MVSU–sponsored Threadgill board were coincidentally present, and (iv) she subsequently was informed that she would not be hired after all by the second school.

is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

Moore's liberty interest is the prospect of future employment as a teacher or aid in a school. In response to the motion for summary judgment, Moore failed to produce evidence which would show that she had in fact been denied such an opportunity due to publication of the reasons for her firing from Threadgill.

The missing element is whether or not a responsible Threadgill employee or Threadgill board member informed the hiring authority of the second school about the circumstances of Moore's termination. This is a genuine issue of material fact, the most important link in the causal relationship between the fact of Moore's termination at Threadgill and the fact of her termination at her subsequent place of employment. Nothing in the record before the trial court or this Court warrants an inference that Moore ever stated directly that such a link did in fact exist.[8] Once the defendants, with factual support, made their motion for summary judgment the burden shifted to Moore to show that genuine issues of material fact did in fact exist. She failed in meeting her burden and consequently the trial court did not err in granting summary judgment against Moore on the liberty interest claim.

### b. ... *Property*

■ Each of the four employees was employed on a yearly contract. The contracts with the preceding Greenwood-sponsored board, by their terms, expired September 30, 1983. Moore and Peoples were not fired as such, rather their contracts were not renewed. Williams–Anthony, likewise, was not demoted, nor was Porter put on probation in violation of her contract, rather they were hired on new terms. Each is in much the same position as the non-tenured professor in *Roth.*

There must be some basis of entitlement in order to create a property interest, usually a reasonably founded expectation.

*See Roth,* 408 U.S. at 566. Moore contends that the request for submission of their names and resumes to the Board in September 1983, created such an expectation. However, the trial court was entitled to conclude that a mere proposal or invitation which states nothing about continued employment can scarcely create a claim of entitlement.

Furthermore, as none of the plaintiffs were deprived of a property right, the need to reach the issues of substantive or procedural due process does not arise.

The trial court therefore did not err in either granting summary judgment against Moore's liberty interest claim or in dismissing the deprivation of property interest claims of all four employees.

### III. *The First Amendment*

■ The speech at issue consists of written complaints made by the four employees with respect to events at Threadgill. In a petition dated April 25, 1983, the four employees, along with other employees at Threadgill, prepared a list of grievances concerning Coleman and the way she ran Threadgill. *Supra,* n. 3. The list was addressed to the Executive Director of Threadgill, Lewis. Coleman denied having any knowledge of the grievances until October 1983, after the employment decisions had been made. The trial court found that the four employees made no showing that the grievances were ever presented to the MVSU board or that the MVSU board acted in retaliation because of those grievances. Thus, even if Coleman were fully aware of the grievances on September 15, 1983, the trial court found that the employment decisions could not have been retaliatory because the MVSU board was not shown to have been aware of the grievances and Coleman had no direct voting power and played no direct role in the employment decisions herself. On appeal, we find that Moore mischaracterizes these complaints as "public criticism," and her

---

**8.** Moore presented affidavits but no memorandum of law advancing her theory of liability. No statement was made asserting that information regarding her termination was in fact passed from Threadgill to the new employer.

role as that of a public citizen, not an employee.

First, although some of the events complained of might be of interest to the public, we do not agree that they were of public "concern." Rather, most of the items listed in the complaint dated April 25, 1983, involved only personal grievances against co-workers and the supervisor of Threadgill, primarily, charges of favoritism shown to one particular employee, Davis, and the laxity in which Threadgill rules were enforced regarding that employee. Two complaints stand out as perhaps rising above this purely personal level, (i) that Davis was permitted to carry a gun to Threadgill and (ii) that Davis inflicted corporal punishment on the children at Threadgill. These complaints however, are written in terms of showing "favoritism" to Davis by permitting such activity, not that this was a matter of public concern and ought to be stopped. The complaints do not warn that Davis was a threat to the children or to her co-workers. The episodes were recited solely as examples of the favoritism allegedly practiced by the supervisor at Threadgill. The plaintiffs were requesting that the rules be enforced equally on all employees as a matter of employer equality, not as a matter of public safety. As such, the complaint charges mere favoritism and is thus a personal grievance of the employees and not a matter of public policy. *See Davis v. West Community Hosp.*, 755 F.2d 455, 461–62 (5th Cir.1985) (Demands for apologies and complaints of lack of consideration in various matters are not matters of public concern.); *Wheeless v. Manning*, 682 F.Supp. 869, 872 (S.D.Miss.1987) (A proposal airing employee grievances about wages, promotions, relations between nurses and the director of nursing and employee input into policy changes are matters of private or personal concern to the employees).

Furthermore, no effort had been made to communicate these complaints to the general public. They were addressed only to Lewis, as the executive director of Threadgill in April 1983, and, possibly, subsequently to Coleman as supervisor of Threadgill, both of whom were under the direction of the Greenwood-sponsored board at that time.

The Supreme Court has stated that when a public employee speaks in her role as an employee, and not as a citizen, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708, 720 (1983), *See also Terrell v. University of Texas System Police*, 792 F.2d 1360, 1362 (5th Cir.1986) *cert. denied*, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987).

We therefore find no error in the judgment of the trial court entered August 31, 1987, against the four employees on the First Amendment claim. The grievances did not rise to the level of issue of public concern. Under *Connick* and *Terrell*, these grievances were best left to the discretion of the MVSU board.

### IV. *Sovereign Immunity*

On appeal, the four employees contend that the trial judge erred in holding their claims are barred by the Eleventh Amendment. We do not reach the sovereign immunity argument because we find no valid First or Fourteenth Amendment claim.

### V. *Exclusion of the Patrick Lewis Deposition*

█ Moore finally claims that the trial court erred by excluding the deposition of Lewis. The deposition was important, in the absence of Lewis personally, since it confirmed that the grievances were filed by the four appellants with Lewis, and that there were staff meetings with Lewis and Coleman concerning the grievances. She also claims the deposition was necessary to refute Coleman's testimony concerning the grievances of the appellants. Moore contends, on appeal, that the pretrial deposition of Lewis on March 7, 1984, was admissible under F.R.Evid., Rule 804(a)(5) and (b)(1), but recites only the language of the rule itself.

Although Lewis was listed as a witness for appellants on the pretrial order filed on

September 23, 1985, Lewis was not present at the trial to testify. At trial, Moore completely failed to explain Lewis' absence, nor on appeal has there been an explanation of the absence of Lewis.

Moore's failure to establish adequately the unavailability of Lewis at the trial below defeats her argument on appeal. In order to have a deposition admitted at trial in lieu of the actual testimony of the witness, the unavailability of the witness must be established. *Dartez v. Fibreboard Corp.*, 765 F.2d 456, 463 (5th Cir.1985).

Under the Rules of Evidence, a witness is unavailable when she "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means." F.R.Evid., 804(a)(5).

The inability to procure the declarant's attendance is further explained by the Federal Rules of Civil Procedure, Rule 32(a)(3) which lists circumstances under which a declarant is available and a deposition may be used at trial. Under this rule, a declarant's deposition may be used if she is shown to be (i) dead, (ii) more than 100 miles away from the place of trial, (iii) is incapacitated by age, illness, infirmity or imprisonment, (iv) the party offering the deposition has been unable to subpoena the declarant, and (v) exceptional circumstances under which the trial court, in the interest of justice, should allow the use of the deposition. F.R.Civ.P. 32(a)(3).

The trial court cannot act spontaneously in these circumstances. Rather, it must be given a reason that conforms to Rules 804(a)(5) and 32(a)(3) to allow in the deposition. The burden is on the offering party to supply such justification. In this case, Moore offered nothing except the plain assertion that Lewis was unavailable. Moore made no effort to explain the unavailability or offer some explanation to the trial court and thus failed to meet her burden. We therefore find that the trial court did not err in excluding the testimony by deposition of Lewis.

AFFIRMED.