REVISED, FEBRUARY 14, 2000

UNITED STATES COURT OF APPEALS
For the Fifth Circuit

No. 99-10482

TAMARA L. HUGHES,

Plaintiff-Appellant,

VERSUS

CITY OF GARLAND,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

February 10, 2000

Before GARWOOD, WIENER, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Plaintiff Tamara Hughes sued her former employer, the City of Garland, alleging that the City violated her due process rights by denying her a meaningful opportunity to clear her name after she was terminated from her job as a 911 operator because she filed a false police report. The City moved for and was granted summary judgment. We review the district court's grant of summary judgment de novo, and affirm.

## BACKGROUND

Hughes was a 911 operator with the Garland Police Department from 1994 until her termination on April 4, 1997. Hughes's employment with the City was at will.

For several months prior to February 1997, Hughes was romantically involved with a city police officer. On February 8, 1997, the police officer ended the relationship. The uncontroverted summary judgment evidence is that Hughes was despondent and depressed about this development. The next day, Hughes called one of her co-workers in the dispatch office of the police department. Hughes told her friend that someone had tried to sexually assault Hughes at her home. Hughes also called the police officer and reported the attempted sexual assault, telling him that he would probably be questioned about the attack because investigators had noticed his picture on her coffee table. City police officers investigated the incident, and eventually determined that the attack reported by Hughes did not occur, and that Hughes had filed a false report, in violation of city policy.

On April 3, 1997, Hughes's supervisor recommended that her employment be terminated for making a false police report in violation of city policy. Significantly, Hughes was provided with written notice of the City's intent to terminate her employment and the reasons for that decision. By letter dated April 3, 1997,

2

Hughes was informed:

> On February 9, 1997, you made statements to Garland Police Officer S. Vornberg that your home had been entered and you were assaulted. In his official capacity as an officer, you caused him to file an offense report. On the same date and during the official investigation into this matter, you made similar statements in a written sworn affidavit to Police Detective Van Cleave. The investigation has revealed evidence that the offense and statements you made in those official documents were false.

Hughes was also informed that she had the right to respond and to explain, either orally or in writing, why she should not be discharged.

On April 4, 1997, Hughes responded in writing. Hughes asserted that she should not be discharged, claiming that her report of attempted sexual assault was true. The City responded with an official notice of termination. Significantly, that letter informed Hughes that she could present her case at a hearing before the city manager, at which time she could appear with counsel and present witnesses with information relevant to the City's decision to terminate her for filing a false police report.

Hughes requested such a hearing and appeared with counsel before the city manager on May 13, 1997. At the hearing, the city manager explained that he would consider whatever Hughes had to say when deciding whether the decision to terminate Hughes's employment needed to be rescinded. Hughes was then given an opportunity to tell the city manager her version of the facts, which included her assertion that the assault occurred and that she did not file a

3

false report.  Hughes's father also spoke on her behalf.  On June 17, 1997, the city manager notified Hughes in writing that the City had considered her statements and decided to adhere to the decision to terminate her employment.

In December 1997, Hughes brought this suit against the City of Garland, alleging that the City wrongfully accused her of filing a false police report and then denied her any meaningful opportunity to clear her name.  Hughes sought reinstatement to her position and compensatory damages.  The City moved for summary judgment arguing, inter alia, (1) that Hughes failed to produce evidence competent to establish that the City made the reasons for her termination public, and (2) that Hughes could not prevail because she did in fact receive a meaningful opportunity to clear her name.  The district court relied upon the first ground to grant summary judgment in favor of the City, holding that Hughes's evidence did not establish public disclosure of the reasons for her discharge by the City.  The district court did not address the remaining arguments asserted by the City in support of its summary judgment motion.  Hughes filed a timely notice of appeal.

On appeal, Hughes argues that she produced sufficient evidence that the City publicly disclosed the reason for her termination, and that she was not provided any meaningful opportunity to clear her name.  The City reasserts its arguments to the contrary, which were included in the City's motion for summary judgment.

4

## DISCUSSION

## I.

The Supreme Court first recognized that there may be a constitutional requirement for notice and an opportunity to be heard upon dismissal from government employment in ***Perry v. Sinderman***, 92 S. Ct. 2694 (1972), and ***Board of Regents v. Roth***, 92 S. Ct. 2701 (1972), both decided June 29, 1972. The right to notice and an opportunity to be heard in this context are procedural requirements rather than substantive due process rights, and those requirements never arise unless the plaintiff can allege some deprivation of liberty or property as set forth in the Fourteenth Amendment. ***Perry***, 92 S. Ct. at 2698; *see also* ***Wells v. HICO Indep. Sch. Dist***, 736 F.2d 243, 251 (5th Cir. 1984); ***Moore v. Mississippi Valley State Univ.***, 871 F.2d 545, 548 (5th Cir. 1989) (discussing "threshold requirement" that "the plaintiff demonstrate either a liberty or a property interest in her public employment"). Both ***Perry*** and ***Roth*** involved primarily the issue of whether the plaintiffs had any property interest in their non-tenured employment as university professors. There is no allegation in this case that Hughes had any property interest in continued employment by the City.

In ***Roth***, the Supreme Court also distinguished the case at hand by recognizing that a state's employment decisions might implicate

5

liberty interests. *Roth*, 92 S. Ct. at 2707. The Court noted that "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id*. (internal alterations and quotations omitted). In such a case, due process requires that the affected employee be given notice of the charges and an opportunity to clear his or her name. *Id*. at 2707 & n.12. This Court explored the boundaries of the liberty interest recognized in *Roth* in *Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir. 1989):

> [P]ublic officials do not act improperly in publicly disclosing charges against employees, but they must thereafter afford procedural due process to the person charged. Moreover, the process due such an individual is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee. If a government employer discharges an individual under circumstances that will do special harm to the individual's reputation and fails to give that individual an opportunity to clear his name, however, the individual may recover monetary damages under § 1983 for the deprivation of his liberty interest under the Fourteenth Amendment.

*Id*. at 395 (internal citations omitted).[1]

To state a claim for deprivation of a liberty interest, the plaintiff must allege more than merely the stigma of discharge. *See Wells*, 736 F.2d at 256 (Mere proof that the employment decision

---

[1] Rehearing was subsequently granted in *Rosenstein*, but the majority opinion cited herein was eventually reinstated in relevant part. *See Rosenstein v. City of Dallas*, 901 F.2d 61 (5th Cir. 1991) (en banc).

6

"might make an individual less attractive to other employers does not, by itself, implicate a liberty interest."); *see also* **Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs.**, 925 F.2d 866, 878 (5th Cir. 1991). Moreover, concern about the impact of the plaintiff's discharge on his or her general reputation is not, standing alone, sufficient to give rise to the required liberty interest. *See* **Rosenstein**, 876 F.2d at 395 n.1; **In re Selcraig**, 705 F.2d 789, 795-96 (5th Cir. 1983); **White v. Thomas**, 660 F.2d 680, 684 (5th Cir. 1981). To the contrary, "a constitutionally protected liberty interest is implicated only if an employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." **White**, 660 F.2d at 684; *see also* **Moore**, 871 F.2d at 550; **Wells**, 736 F.2d at 256. Hughes's claim is premised upon such a deprivation of liberty. Hughes maintains that the City's allegation that she made a false police report is relevant to and can be reasonably expected to interfere with her future employment prospects in other police departments as a 911 operator.

To prevail on her § 1983 claim that the City infringed upon a cognizable liberty interest by denying her the opportunity to clear her name, Hughes must show: (1) that she was discharged; (2) that stigmatizing charges were made against her in connection with the discharge; (3) that the charges were false; (4) that she was not

7

provided notice or an opportunity to be heard prior to her discharge; (5) that the charges were made public; (6) that she requested a hearing to clear her name; and (7) that the employer refused her request for a hearing. *See Rosenstein*, 876 F.2d at 395-96; *Moore*, 871 F.2d at 549. While there is an obvious dispute about whether there was ever any assault and, thus, whether Hughes in fact filed a false police report, the propriety of summary judgment does not depend upon the resolution of that factual dispute. Rather, the propriety of summary judgment in this case centers around Hughes's alleged failure to produce any evidence with respect to element (5); only if she prevailed on that element would we reach elements (6) and (7).

## II.

Hughes offered three types of evidence to satisfy the public disclosure element of her claim. First, Hughes offered affidavit testimony from Jackie Parker and William H. Johnson. Jackie Parker, who is Hughes's neighbor, testified that she called the police department about two weeks to one month after the alleged assault on Hughes. Parker called to get assistance because her daughter's bicycle had been stolen, but she also took the opportunity to prod a 911 operator about the alleged assault at Hughes's address. Parker told the operator that the entire neighborhood was concerned for the safety of their daughters and neighbors and that she needed to know what was happening with the

8

investigation. Parker testified that the operator then said that the person reporting the offense was a 911 operator who made the report to get attention after a failed romance and that Parker should not be concerned that further assaults would occur.

William H. Johnson, an employee in an auto repair shop owned by a city policeman, testified that his boss, the policeman, told him that the boss's secretary told the boss that the Hughes report was "a bull shit deal." Johnson also testified that an office supply worker who is friends with a city police officer asked Johnson whether he had "heard about" Hughes. Finally, Johnson testified that there was talk among his co-workers at the auto repair shop about Hughes being a jilted lover who filed a retaliatory false report. Hughes contends that the Parker and Johnson affidavits are competent and sufficient evidence to create a fact issue concerning whether the City orally disclosed the reason for her discharge through its 911 operator or a city police officer.

The district court held that this evidence failed to create a genuine issue of material fact because there was no "connection between the publication and some act by a city official." The district court concluded that there was no indication that the reassurance offered to Hughes's neighbor by the 911 operator or the shop talk circulating around Mr. Johnson's work place was generated in any way by conduct fairly attributable to the City. Hughes maintains that it is immaterial who released the information

9

concerning her discharge or whether that person had authority to act for the City. Stated differently, Hughes maintains that the relevant test is whether the City had a policy or practice of failing to protect employee information such that the information was in fact released, without regard to whether the release can fairly be ascribed to the City. We disagree. This Court's authority conclusively establishes that public disclosure must be fairly attributable to the defendant employer. *See*, *e.g.*, **Blackburn v. City of Marshall**, 42 F.3d 925, 936 n.10 (5th Cir. 1995); **Moore**, 871 F.2d at 549-50; **Wells**, 736 F.2d at 257-58; **In re Selcraig**, 705 F.2d at 795-97.

There remains, however, the question of whether the comments of the 911 operator or the police officer, both recounted in the form of second-hand hearsay or worse in the summary judgment evidence, can be fairly ascribed to the City. We agree with the district court that there is no triable issue arising from the affidavit testimony. First of all, neither Parker nor the 911 operator is alleged to have identified Hughes by name during the call. Rather, the 911 operator released relatively innocuous information in response to the direct inquiries of an informed and concerned citizen. Johnson's affidavit, which provides only several rambling scenarios in which Hughes's name came up, is even less probative. The only comment attributed to the city police officer is a report gathered from his secretary and passed on to

10

auto repair shop employees that the report was a "bull shit deal." Hughes has shown nothing more than that some people in the community heard rumors about the events leading up to her discharge. This casual gossip falls well short of "intentional or official" disclosure by the City. *See **Wells***, 736 F.2d at 256; ***In re Selcraig***, 705 F.2d at 796 n.6.

Hughes also offered evidence that there was a stray page in her city personnel file that was taken from the diagnostic manual known as the Diagnostic and Statistical Manual (DSM). Hughes does not argue that the contents of her personnel file (including the objectionable page) have been disclosed, but that they are likely to be disclosed because Texas law provides that the personnel files of state employees are freely available in all their particulars to anyone who asks. *See **In re Selcraig***, 705 F.2d at 796 n.6. The City responds with evidence that the personnel records of state employees are not freely available, and that both the employer and the government employee have the right to resist disclosure of such records when disclosure will invade the government employee's privacy. Further, the City responds that the City's policy is to keep employee information confidential, and that no city official or employee is authorized to release information about a former employee aside from the starting and ending dates of employment, the salary at termination, and the last position held. We conclude that the mere presence of the DSM page in Hughes's personnel file

11

is insufficient to create a triable issue on the public disclosure element of her claim.

Hughes's final evidence of public disclosure is based upon the fact that she herself must disclose the reason for her discharge to prospective employers. Thus, Hughes is arguing that compelled self-publication may satisfy the requirement of public disclosure. The Circuits are split on the issue of whether self-publication may satisfy the public disclosure element in a § 1983 claim alleging that the plaintiff was denied a name clearing hearing. *See Olivieri v. Rodriguez*, 122 F.3d 406, 408-409 (7th Cir. 1997) (collecting cases, documenting circuit split, and discussing problems with the self-compelled publication rationale), *cert. denied*, 118 S. Ct. 1040 (1998). This Circuit has consistently required that public disclosure be made by the City. *See*, *e.g.*, *Blackburn v. City of Marshall*, 42 F.3d 925, 936 n.10 (5th Cir. 1995); *Moore*, 871 F.2d at 549-50; *Wells*, 736 F.2d at 257-58; *In re Selcraig*, 705 F.2d at 795-97. Indeed, we have expressly held that there is no liability when the "agency has carefully kept the charges confidential and the plaintiff caused them to be made public." *Rosenstein*, 876 F.2d at 396 n.6. This precedent is sufficient to require rejection of the self-publication rationale. For the foregoing reasons, we agree with the district court that summary judgment is appropriate because there is no genuine issue of material fact with respect to the public disclosure element of

12

Hughes's claim.

## CONCLUSION

The district court's grant of summary judgment in favor of the City of Garland is AFFIRMED.