# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

———————————

m 01-30875
Summary Calendar

———————————

GEORGE LEE, III,
INDIVIDUALLY AND ON BEHALF OF ALL THOSE SIMILARLY SITUATED,

Plaintiffs-Appellants,

VERSUS

MARC MORIAL,
MAYOR OF THE CITY OF NEW ORLEANS, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;
CITY OF NEW ORLEANS;
RICHARD PENNINGTON,
CHIEF OF POLICE FOR THE CITY OF NEW ORLEANS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,

Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Eastern District of Louisiana
(99-CV-2952)

———————————

April 26, 2002

Before JONES, SMITH, and
EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

———————————

[*] Pursuant to 5TH CIR. R. 47.5, the court has
(continued...)

The New Orleans Police Department
("NOPD") suspended George Lee, III, with-

———————————

[*](...continued)
determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

out pay because prosecutors had charged him with rape and armed robbery. The NOPD announced the suspension and their suspicions at a press conference. After four trials, Louisiana convicted Lee of several counts of forcible rape and kidnaping. Lee sued, alleging that NOPD's suspension and press conference violated the federal and Louisiana constitutions and Louisiana statutes. The district court found that Lee failed to state a claim for violations of his federal rights under the Fourth, Sixth, and Fourteenth Amendments and dismissed the state law claims without prejudice because it declined to exercise supplemental jurisdiction. Finding no error, we affirm.

## I.

In August 1999, NOPD officers arrested Lee for aggravated rape, aggravated kidnaping, and armed robbery. On the same day, NOPD suspended Lee for 120 days for violating an internal rule requiring officers to adhere to the law. The chief of the NOPD, Richard Pennington, gave a press conference describing Lee as a rapist and announcing his emergency suspension. Lee spent 120 days in jail before an Orleans Parish judge ruled that the officers lacked probable cause for the arrest. The state then dropped the charges.[1]

In November 1999, a grand jury indicted Lee on two counts of sexual battery, two counts of extortion, and three counts of second degree kidnaping. Lee pleaded not guilty, and a jury found him not guilty of extortion but hung on one count of sexual battery and two counts of kidnaping. The court reset the case for trial, but the state dropped the charges.[2]

In February 2000, the state launched a second case, reinstating the remaining charges and adding more. The state charged Lee with six counts of forcible rape and four counts of second degree kidnaping. Lee pleaded not guilty. The case went to trial in April 2000, but the court declared a mistrial, finding that the state had concealed *Brady* material and ordering the prosecution to produce the evidence to the defense. The state then again dropped the charges in the second case.

In May 2000, the state brought a third case, reinstating the charges and adding new counts. The state charged Lee with seven counts of forcible rape and five counts of second degree kidnaping. Lee pleaded not guilty. The trial began in October 2000 but lasted only seven days; the court declared a mistrial because of prosecutorial misconduct because the prosecutor had planted evidence on the defendant's clothing sometime between the second and third trials.[3] In February 2001, Lee faced trial a fourth time; the jury convicted him on all counts and sentenced him to thirty

---

[1] This account of the August 1999 arrest and suspension reflects the most favorable reading of Lee's complaint, *Schultea* reply, response to the motion to dismiss, and appellant's brief. None of these documents spells out the initial arrest and suspension fully. The city of New Orleans is also opaque about the initial arrest.

[2] We have omitted all of the appeals to the intermediate courts and the Louisiana Supreme Court; we also omit the contempt proceedings spawned by prosecutorial misconduct. None of these events is directly relevant to the appeal.

[3] The Louisiana Court of Appeal's decisions provide a useful summary of the criminal case's procedural history. *See State v. Lee*, 767 So. 2d 97, 98 (La. App. 4th Cir. 2000); *State v. Lee*, 778 So. 2d 656, 657-59 (La. App. 4th Cir. 2001); *State v. Lee*, 787 So. 2d 1020, 1024-27 (La. App. 4th Cir. 2001).

years at hard labor.

## II.

In September 1999, Lee sued under 42 U.S.C. §§ 1981 and 1983 for alleged violations of his constitutional rights. The complaint named as defendants Mayor Marc Morial, NOPD Chief Richard Pennington, and the city of New Orleans. Lee sued Morial and Pennington in their individual and official capacities.

The complaint alleged several constitutional violations stemming from the suspension and its publication. First, Lee alleged that the defendants had violated the Fourteenth Amendment's Due Process Clause by failing to give him notice of the suspension, denying him a presuspension name-clearing hearing, and publicizing the rape charges at a press conference. Second, Lee claimed that publicizing the rape violated his Fourth Amendment right to privacy. Third, he averred that the NOPD violated the Fourteenth Amendment's Equal Protection Clause by adopting a disciplinary policy that systematically disadvantaged black officers. Finally, Lee claimed that the publication compromised his Sixth Amendment right to an impartial jury in his subsequent criminal trial.

In December 1999, the defendants filed an answer and first asserted that the complaint failed to state a claim on which relief could be granted. In January 2000, the court held a pretrial conference; the parties agreed not to file amendments to pleadings any later than thirty days after the conference; but the district court reserved the right to extend any of the deadlines by granting a motion for a continuance.

Defendants moved to dismiss under FED. R. CIV. P. 12(b)(6). The court dismissed the city and Morial and Pennington in their official capacity because *Monell v. City of New York Dep't of Social Servs.*, 436 U.S. 658 (1978), requires the plaintiff to point to a municipal custom or policy that inflicted the injury. Lee failed to do so. The court's memorandum described a willingness to reinstate the claims if Lee amended the complaint appropriately.

The court then turned to the claims against Morial and Pennington in their individual capacities and found that the complaint failed to set forth facts with sufficient particularity to create individual liability. The court dismissed the Fourth and Sixth Amendment claims, then ordered Lee to file a *Schultea* reply to the answer supplying specific facts that supported his other claims. First, Lee had an obligation to identify particular state law or contractual bases for his property right to avoid suspension or retain his position. Second, the court insisted that Lee plead whether he requested a name-clearing hearing. Third, the court ordered Lee to explain in greater detail the facts supporting his Equal Protection claim.

On the same day as the district court's order, Lee filed a pleading labeled "Plaintiff's Reply to Defendant's Answer and Affirmative Defenses." The court ruled that Lee's reply failed to satisfy the requirements of its earlier order. The reply and proposed amendments sought to add multiple new defendants and substantially to alter the original complaint. The court held that Lee was not in compliance with the order and rejected the reply, then instructed Lee to "review [the] June 1, 2000 Memorandum and Order more carefully and attempt to comply with the precise directions given." The court did not specify a due date for the next *Schultea* reply. Lee filed a notice

of appeal from the order dismissing his Fourth and Sixth Amendment claims.

Lee filed a second *Schultea* reply and a motion to amend the original complaint. The court ordered the case closed because of the pending criminal proceedings in the Parish of Orleans and pending appeal to this court. The district court denied Lee's motion to amend the complaint because it had closed the case, but specified that its denial "is without prejudice to the right of the plaintiff to re-urge the motion if the case is restored to the trial docket."

A panel of this court granted Lee's unopposed motion to dismiss the appeal without prejudice. Then, after Lee's conviction, defendants filed a motion to dismiss the remainder of the claims under FED. R. CIV. P. 12(b)(6). Lee filed a response to the motion to dismiss. The district court filed a memorandum concluding that Lee had never effectively amended his complaint, considering his *Schultea* reply, and ruling that Lee had failed to state a claim for any federal constitutional violation.

### III.

Lee appeals the denials of his motions to amend the complaint. After a responsive pleading has been filed, the court should grant "leave" to amend "freely" "when justice so requires." Fed. R. CIV. P. 15(a). We review for abuse of discretion the refusal to allow amendment.[4]

Lee filed his first motion to amend before the district court had ruled on any of the dispositive motions. The court rejected the motion because it did not remedy any of the flaws identified in the court's memorandum. If an amended complaint cannot survive a motion to dismiss, a district court has the discretion to refuse the amendment.[5] The district court instead instructed Lee to study the court's memorandum and submit amendments that would cure the complaint's deficiencies.

Lee then filed his second *Schultea* reply and a motion to amend. The court denied the motion because Lee had already filed an appeal with the Fifth Circuit. District courts do not abuse their discretion by denying a motion to amend after the plaintiff has appealed the judgment. A proper notice of appeal divests the district court of jurisdiction over all matters relating to the appeal.[6] Although this court may have lacked jurisdiction, and the district court may have retained the power to amend, the district court chose not to allow amendment.

---

[4] *Lewis v. Fresne*, 252 F.3d 352, 356 (5th Cir. 2001); *Carbalan v. Vaughn*, 760 F.2d 662, 664-65 (5th Cir. 1985).

[5] *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980) ("Clearly, if a complaint as amended is subject to dismissal, leave to amend need not be given."); *DeLoach v. Woodley*, 405 F.2d 496, 496-97 (5th Cir. 1969) (finding court need not amend when complaint fails to cure original, fatal defects).

[6] *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam) ("The filing of a notice of appeal is an event of jurisdictional significanceSSit confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.") (citation omitted); *United States v. Hitchmon*, 602 F.2d 689, 694 (5th Cir. 1979) (en banc) (finding that a properly filed appeal stripped the district court of jurisdiction over matters relating to the appeal).

The proposed amendment would have added more parties and substantially altered the underlying case while on appeal. The district court knew that if this court found jurisdiction, the amendment would have no effect.[7] Rather than making a guess about appellate jurisdiction, the district court displayed sensitivity to the well-established principle that an appellate court normally has the power to determine its own jurisdiction.[8] This awareness marks sound judicial administration, not an abuse of discretion.[9]

## IV.
### A.

"We review the district court's ruling under [rule] 12(b)(6) *de novo*." *Shipp v. McMahon*,

---

[7] *Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063-64 (5th Cir. 1990) (declaring amended complaint ineffective because district court had significantly changed the status of the case before the court of appeals).

[8] As the Eight Circuit explained in a similar case:

[A]ppellate jurisdiction is primarily an issue for the appellate court. Therefore, if an appeal is taken from an interlocutory order and the issue of appealability is in doubt, the district court should stay its hand until we resolve the issue of our jurisdiction.

*State ex. rel. Nixon v. Couer D'Alene Tribe*, 164 F.3d 1102, 1106-07 (8th Cir. 1999).

[9] Lee also fails to point out any harm caused by the refusal to amend. In its June 2001, memorandum, the court considered both the original complaint and the rule 7 reply's allegations. Lee does not explain why refusing to permit formal amendment affected the facts considered by the district court when resolving the rule 12(b)(6) motion.

234 F.3d 907, 911 (5th Cir. 2000), *cert. denied*, 532 U.S. 1052 (2001). The court must liberally construe the complaint in favor of the plaintiff and assume the truth of all pleaded facts. *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999). "The court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

FED. R. CIV. P. 8(a)'s generic pleading requirements govern suits against municipalities and individual defendants in their official capacity. *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). Lee need only provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Terrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (citation omitted).

Lee argues that the district court erred by applying a "heightened pleading standard" to his claims against Morial and Pennington as individuals. In *Leatherman*, the Court held that federal courts could not apply a "heightened pleading standard" immunity to states, municipalities, and government employees sued in their official capacity. *Id.* at 165, 166-67. Nothing in *Leatherman* spoke to whether qualified immunity requires § 1983 plaintiffs to satisfy a heightened pleading standard for claims against government officials in their individual capacity.

We recognized the open question in *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc), and offered a solution, recognizing that even rule 8 requires that plaintiffs plead "more

than conclusions." *Id.* at 1431, 1434. If the complaint alleges only conclusions, the court should order the plaintiff to file a reply to the answer under FED. R. CIV. P. 7(a). *Id.* at 1433.[10] The court then considers whether the complaint and rule 7 reply "support[ ]" the claim "with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts." *Id.* at 1434.[11] The district court correctly applied the heightened pleading requirement required by *Schultea* and permitted by rule 7.[12]

---

[10] Rule 8(a)(2) does not apply to rule 7 replies, because rule 8(a)(2) applies only to "original claim[s], counterclaim[s], cross-claim[s], or third-party claim[s]." *Id.*

[11] Several panels have applied the *Schultea* standard. *E.g.*, *Shipp*, 234 F.3d at 912 ("[I]f the pleadings on their face show an unreasonable violation of a clearly establish[ed] constitutional right, the defense of qualified immunity will not sustain a motion to dismiss under Rule 12(b)(6)."); *Reyes v. Sazan*, 168 F.3d 158, 161-62 (5th Cir. 1999) (reversing district court for failure to order *Schultea* reply when initial complaint only alleged "bare conclusion[s]").

[12] Our precedent actually supports applying the pre-*Leatherman* pleading standard to claims against individual officers. *Anderson*, 184 F.3d 439 ("This court thereafter declined to abandon the requirement, articulated in *Elliott v. Perez*, 751 F.2d 1472 (5th Cir. 1985), that plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to a constitutional violation.") (citation omitted); *Meadowbriar Home for Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 531 (5th Cir. 1996) (finding that *Elliot*'s pleading requirement for individual defendants survived both *Leatherman* and *Schultea*). The continued validity of *Elliott's* heightened

(continued...)

B.

Holding a municipality or a municipal official acting in his official capacity liable under § 1983 requires a finding of a municipal custom or policy. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Monell*, 436 U.S. at 694. The official policy or custom must inflict the plaintiff's injury. *Monell*, 436 U.S. at 694.

To show an unconstitutional policy or custom, the plaintiff must (1) identify the policy or custom, (2) connect the policy or custom with the government entity, and (3) show that the policy caused the plaintiff's particular injury. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc). We define an official policy as "a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). Although even a single decision by a final policymaker can establish official policy, *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986), only the decisions of officials possessing "*final policy making authority*" represent official policy. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (emphasis added).

The district court dismissed all of Lee's claims against the city and Morial and Pennington in their official capacities. The complaint identified the mayor as the person

---

[12](...continued) standard for individual defendants renders the district court's application of *Schultea's* pleading standards harmless. *See Brandley v. Keeshan*, 64 F.3d 196, 200 (5th Cir. 1995). In this case, however, we apply *Schultea*, because the district court ordered a rule 7 reply.

responsible for the NOPD and Pennington as the person who held a press conference labeling Lee a rapist. The district court found this insufficient to allege an unconstitutional official policy, to identify the final policymaker under state or local law, or to establish the city's liability for that person's actions. Lee does not make a single argument or identify a single fact on appeal that would establish liability for the city or Morial and Pennington in their official capacity; we therefore assume that he appeals only the dismissal of his claims against Morial and Pennington in their individual capacity.

### C.

Officials who perform discretionary duties can assert the defense of qualified immunity when sued in their individual capacity. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 818 (1982). To overcome qualified immunity, the plaintiff must demonstrate (1) the violation of a constitutional right clearly established at the time of the incident and (2) an objectively reasonable official would consider the conduct unlawful. *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998). Because Lee's pleadings do not allege violations of constitutional rights, we need not address the question of objective reasonableness.

### V.

Lee argues that his pleadings state a claim for violating his right to due process under the Fourteenth Amendment. He argues that, contrary to the district court's finding, he established his status as a permanent civil servant and that Morial and Pennington did not afford him adequate pre-suspension process. Lee also contends that Pennington's press conference compromised his reputation as a peace officer without due process. The Supreme Court has squarely rejected his first

theory of recovery, and Lee's pleadings fail to allege an essential element of the second.

### A.

To state a claim for deprivation of due process, Lee must plead and prove (1) the deprivation of a constitutionally protected interest and (2) constitutionally inadequate procedures. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 541 (1985). To resolve the scope of Lee's constitutionally protected property interests, we must look to state law. *Garcia v. Reeves County, Texas*, 32 F.3d 200, 203 (5th Cir. 1994).

State law determines whether a public employee has a statutory right to continue work and receive pay. Most states give workers a statutory right to continued employment but not a particular job or position. Suspending the public employee without pay can raise more serious constitutional questions than suspending the public employee with pay. *Davis v. Mann*, 882 F.2d 967, 973 (1989). Some state laws also create a property interest in the non-pecuniary benefits of a particular occupation, such as reputation or status. *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 997 (1992) (en banc) (finding that state law did not establish such a property right).

In his appellant's brief, complaint, and rule 7 reply, Lee alleges various and confusing sources of his right to continued employment. The district court found that his descriptions of state law were only conclusional and that he had not alleged a property right to avoid suspension. We find it unnecessary to reach the question of his right to avoid suspension under Louisiana state law because the defendants did not have an obligation to provide a pre-suspension hearing.

When determining the adequacy of process, we must balance three factors: (1) the private interest affected; (2) the risk of erroneous deprivation from current and proposed procedures; and (3) the government's interest. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). The Supreme Court twice has held that public employers may immediately suspend employees without pay who have been charged with felonies.

In *FDIC v. Mallen*, 486 U.S. 230, 232 (1988), regulations permitted the FDIC to suspend indicted officials. The parties and the majority agreed that a high-ranking bank official criminally indicted for making misleading statements to the FDIC did not have a constitutional right to a presuspension hearing. *Id.* 240-41. The state's interest in preserving public confidence in the bank outweighs the individual interest in receiving pay for a few months or weeks. *Id.* The grand jury's *ex parte* finding of probable cause provides a sufficient basis for both the arrest and the suspension. *Id.* The Court described the more difficult and relevant constitutional question as how long the suspended employee must wait before a post-suspension hearing. *Id.* at 242, 246-47. We need not linger on this question, however, because Lee has not asserted in any of his pleadings or briefs that the NOPD violated his due process rights by denying a post-suspension or pretermination hearing. He argues only the illegality of his suspension.

In *Gilbert v. Homar*, 520 U.S. 924, 926-27 (1997), a university suspended a campus police officer without pay immediately after his arrest in a drug raid. The police filed a criminal complaint alleging felony violations, which they later dismissed, but the university still demoted the officer to groundskeeper before ending the suspension. *Id*. at 927. The Court reasoned that the employee has only a slight property interest in avoiding a temporary suspension and post-suspension process could satisfy that need. *Id.* at 932. The Court also explained that "the State has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers." *Id.* The Court held that an arrest and formal charge provides the same *ex parte* finding of probable cause created by an indictment. *Id.* at 934. The Court emphasized that the public employer' real constitutional duty was to provide prompt and adequate post-suspension procedures. *Id.* at 934-35.[13]

Lee's pleadings seek relief only for the unlawful suspension, and his arrest and formal charge were sufficient to justify the suspension. He does not argue that he did not have access to post-suspension procedures. Nor does he argue that the NOPD's pretermination procedures failed to pass constitutional muster. The Supreme Court has held that when the state brings felony charges against the employee the public employer may promptly suspend the employee without a hearing.

### B.
Lee also argues that the court erred by dis-

---

[13] Public employers need not provide a full-fledged presuspension hearing. *Caine v. M.D. Hardy*, 943 F.2d 1406, 1412 (5th Cir. 1991) (en banc) (finding informal appearances before committee satisfied due process requirements before suspension so long as hospital later provided an adequate postsuspension hearing); *Darlak v. Bobear*, 814 F.2d 1055, 1064 (5th Cir. 1987) (finding that an informal investigation and opportunity to deny allegations were adequate process prior to suspension).

missing his due process claim premised on Pennington's press conference and reputational injury. Lee, however, has never alleged that he requested a name-clearing hearing, which is a necessary element of the constitutional tort.

The Fourteenth Amendment recognizes an individual's liberty interest in his "good name, reputation, honor, or integrity." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). A public employer implicates this protected liberty interest by making public defamatory statements about an employee when refusing to hire, suspending, firing, or making other employment decisions. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 633 n.13 (1980); *Dennis v. S & S Consol. Rural High Sch. Dist.*, 577 F.2d 338, 341-42 (5th Cir. 1978). To prevail on his § 1983 claim based on the defendants' refusal to hold a name-clearing hearing, Lee must demonstrate: (1) that the NOPD took an adverse employment action; (2) that Pennington made stigmatizing charges against him in connection with the action; (3) that the charges were false; (4) that the defendants did not provide notice or an opportunity to be heard prior to the action; (5) that the defendants made the charges public; (6) that he requested a hearing to clear his name; and (7) that the defendants refused the request. *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000) (citations omitted).

Lee has never pleaded facts showing that he requested and was denied a hearing to clear his name. This court repeatedly has emphasized that the plaintiff must request such a hearing.[14]

Lee argued in the district court, although he does not repeat the argument in his appellant's brief, that incarceration barred him from requesting the hearing. We previously have held that a public employee's hospitalization did not excuse the employee from requesting a name-clearing hearing. *Galloway v. Louisiana*, 817 F.2d 1154, 1158 (5th Cir. 1987).

Like the plaintiff in *Galloway*, Lee does not explain why he could not request the hearing from jail by correspondence or through his attorney. Lee's failure to plead a request for a name-clearing hearing and a denial is fatal to this claim.

VI.

Lee argues that the district court erred by dismissing his claims under the Fourth Amendment. Lee, however, has never identified a coherent legal theory or constitutional tort that would entitle him to recover for invasion of his Fourth Amendment right to privacy.

The Fourth Amendment does not create a general right protecting public employees from defamation. *Paul v. Davis*, 424 U.S. 693, 712 (1976); *Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir. 1999). The Fourth Amendment establishes a tort for malicious persecution, but the plaintiff must allege that the criminal action terminated in his favor. *Kerr*, 171 F.3d at 340. Lee admits that a jury ultimately convicted him of rape.

Finally, Lee argues that he has stated a claim for "false light invasion of privacy," but

---

[14] *Rosenstein v. City of Dallas*, 876 F.2d 392, 396 & n.7 (5th Cir.), *vacated in part*, 884 F.2d 174 (5th Cir. 1989), *reinstated in relevant part*, (continued...)

[14](...continued) 901 F.2d 61 (5th Cir. 1990); *Compos v. Guillot*, 743 F.2d 1123, 1126 (5th Cir. 1984); *In re Selcraig*, 705 F.2d 789, 796 (5th Cir. 1983).

9

that tort arises under Louisiana law, not the federal constitution. *Doe v. Doe*, 941 F.2d 280, 288 (5th Cir. 1991). The district court properly dismissed the Fourth Amendment claims, because Lee has never articulated a coherent legal theory or the necessary facts.

### VII.

Lee asserted an equal protection violation in the district court; if he raises the argument on appeal, he does so only in passing. Regardless, the district court properly dismissed the claim for the reasons set forth in its June 2000 and June 2001 memoranda.

### VIII.

Lee alleges that Pennington's press conference deprived him of a fair criminal trial and violated his Sixth Amendment right to an impartial jury. The district court refused to consider this claim because the state criminal trial was still pending, and the court did not consider the claim ripe. The jury has since convicted Lee.

We decline to address the Sixth Amendment question for another reason. If Lee could prove that Pennington's comments to the press violated his right to an impartial jury, his conviction would be unlawful. *United States v. Beckner*, 69 F.3d 1290, 1292 & n.1, 1294 (5th Cir. 1995). Section 1983 does not encompass damage actions that challenge the legality of a valid criminal conviction. *Heck v. Humphrey*, 512 U.S. 477, 483 (1994). The § 1983 plaintiff challenging the legality of a prior conviction "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. If the conviction remains in place, the plaintiff's proper remedy lies in direct appeal to state courts or filing for a writ of habeas corpus from state or federal courts. *Id.*

### IX.

Lee reasserts state law claims on appeal only indirectly. For example, he repeatedly refers to the "false light invasion of privacy claim" cognizable under Louisiana law. The district court did not pass on those claims. Instead, after dismissing the federal claims, it refused to exercise supplemental jurisdiction. Lee has not advanced a reason to classify that decision as an abuse of discretion. We cannot think of a relevant factor that would counsel in favor of retaining jurisdiction, so we affirm.[15] Because the district court dismissed the claims without prejudice, Lee still has the option of re-filing them in state court.

AFFIRMED.

---

[15] 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Cabrol v. Town of Youngsville*, 106 F.3d 101, 110 (5th Cir. 1997) (dismissing appellant's state law claims because he failed to provide a persuasive reason why the court should have retained jurisdiction).