MISSISSIPPI FARM BUREAU
INSURANCE COMPANY,
Plaintiff,

v.

Clifton W. COLEMAN, Lillian P. Coleman, and The United States of America, Defendants.

Clifton W. COLEMAN and Lillian P. Coleman, Cross–Plaintiffs,

v.

The UNITED STATES of America, Cross–Defendant.

Civ. A. No. 3:93–cv–710(B)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 12, 1995.

James R. Moore, Jr., James Franklin Noble, III, Copeland, Cook, Taylor & Bush, Jackson, MS, for Mississippi Farm Bureau Mut. Ins. Co.

Wilburn Hyche, Rainer & Hyche, Brandon, MS, for Clifton W. Coleman, Lillian P. Coleman.

Pshon Barrett, U.S. Attorney's Office, Jackson, MS, for Farmers Home Admin., U.S.

## OPINION AND ORDER

BARBOUR, Chief Judge.

Pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure, Cross–Defendant United States of America brings its Motion for Summary Judgment and/or Motion to Dismiss on the cross-claim asserted against it by Cross–Plaintiffs Clifton and Lillian Coleman. Having considered the Motion, the supporting and opposing memoranda and the attached exhibits, the Court finds that the Motion is well taken and should be granted.

## I. BACKGROUND

The Colemans were owners of a parcel of property identified as 123 Shivers Street and located in Pelahatchie, Mississippi. In obtaining this property in 1980, the Colemans assumed a debt owed by Glenn W. and Joyce R. Way to the United States Farmers Home Administration ("FHA"). In addition to allowing the Colemans to assume the Ways' debt, FHA granted the Colemans a new loan in the amount of $18,000.00. As security for the assumption agreement and promissory note, the Colemans executed a deed of trust in favor of FHA.

After FHA declared the Colemans to be in default on their repayment obligations, FHA accelerated the Colemans' account and demanded payment in full. FHA sent the Colemans various Notices of Acceleration via certified mail. On October 21, 1992, via registered mail, FHA sent the Colemans a copy of a Notice of Sale announcing that a foreclosure sale was to be held in Brandon, Mississippi on November 16, 1992. Subsequently, on that scheduled date, a non-judicial trustee's sale was held with the successful bidder being the United States. At the conclusion of the auction, the trustee issued a substituted trustee's deed conveying the property to the United States.

The foreclosed property was insured by Plaintiff-in-Interpleader Mississippi Farm Bureau Insurance Company ("Farm Bureau") with the Colemans as the named insureds and FHA as the insured mortgagee. On or about December 9, 1992, the property was damaged by fire. Farm Bureau investigated the loss and determined that it owed $22,160.97 in insurance proceeds pursuant to the terms of the insurance policy. Subsequently, Farm Bureau filed the present interpleader action in order to determine to whom these insurance proceeds were to be paid. On December 3, 1993, the Court issued an Order which was agreed to by both the Colemans and the United States and which allowed Farm Bureau to tender the proceeds into the registry of the Court and to be discharged from any further liability under the insurance policy.

On November 1, 1993, in their answer to the Complaint to Interplead, the Colemans asserted a cross-claim against FHA alleging that their property had been wrongfully foreclosed by FHA. Specifically, the Colemans alleged that the foreclosure was conducted in violation of their right to due process under the Fifth Amendment of the United States Constitution. The Colemans asked for monetary compensation for the alleged violation

of their constitutional rights and the mental pain and suffering they allegedly suffered as a result of this violation. The Colemans prayed for a declaration voiding the foreclosure sale to the United States and adjudging them to be the rightful owners of the subject property. They also asked for a judgment that the insurance proceeds interpled by Farm Bureau should be awarded to them.

## II. SUMMARY JUDGMENT STANDARD

Because the parties have submitted and the Court has considered materials outside of the pleadings, the Court will treat the Motion of the United States as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Fed. R.Civ.P. 12(b)(6); *Murphy v. Inexco Oil Co.,* 611 F.2d 570, 573 (5th Cir.1980); *Young v. Biggers,* 938 F.2d 565, 568 (5th Cir.1991). Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

 The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–24, 106 S.Ct. at 2552–53. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

 Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

## III. DISCUSSION

In their opposition memorandum, the Colemans oppose the granting of summary judgment against them on their cross-claim by challenging only one of the grounds raised by the United States in its motion for summary judgment. Thus, for the purpose of disposing of the present motion, the Court need only deal with this particular point of contention.

 The Colemans assert that the notice of the foreclosure sale provided to them by the United States was constitutionally deficient in that it did not comply with the due process standards set forth by the United States Supreme Court in *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). The Court finds the Colemans' position to be without merit.

In *Mennonite,* in the context of deciding what type of notice the Due Process Clause required to be given to a mortgagee when

the county initiated a tax sale to satisfy the owner/mortgagor's tax delinquencies, the Supreme Court stated:

> Notice by mail or other means as certain to ensure actual notice is minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party . . . if its name and address are reasonably ascertainable.

462 U.S. at 800, 103 S.Ct. at 2712. The Court finds that the United States satisfied this constitutional mandate. The record shows that thrice during the month of May, 1992, FHA sent Notices of Acceleration to the Colemans via certified mail to their post office box in Pelahatchie, Mississippi. Ex. 6 in Supp. of Mot. for Summ.J. and/or Mot. to Dismiss. These Notices advised the Colemans of the bases for the decision to accelerate their indebtedness and warned them that the United States was prepared to initiate foreclosure proceedings against them in the event that their delinquencies were not cured. *Id.* More importantly, the record also discloses that on October 26, 1992, FHA sent the Colemans via certified mail notice of the foreclosure sale scheduled to take place on November 16, 1992. Ex. 7 in Supp. of Mot. for Summ.J. and/or Mot. to Dismiss. Clearly, these letters show that FHA satisfied the "minimal constitutional precondition" of sending "notice by mail." *Mennonite,* 462 U.S. at 800, 103 S.Ct. at 2712.

In opposing the present motion, the Colemans argue that "there is a reasonable disputed question of material fact as to whether . . . [the] letters were ultimately received by . . . [them]." Mem.Br. in Resp. to Mot. for Summ.J. and/or Mot. to Dismiss at 3. Assuming for the sake of argument that the Colemans are correct that a factual issue exists as to whether they actually received the letters, the Court nevertheless finds that such a factual issue is *not* material. For such an issue to be material, the constitutional standard set forth in *Mennonite* would

necessarily require that a holder of a property interest receive *actual* notice. However, such a reading of *Mennonite* misconstrues the holding of the Supreme Court. As this Court understands *Mennonite,* in stating that "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition" the Supreme Court was not saying that actual notice was necessary. Rather, the Court believes that the Supreme Court was stating that notice by mail was *per se* sufficient to comply with the requirements of due process whether or not such notice ultimately resulted in actual notice. The Colemans have also cited no case authority which would support their construction of *Mennonite* as requiring actual notice.

While it is true that the Postal Service stamped each of the envelopes in which the Notices of Acceleration and Notice of Sale were sent as "UNCLAIMED," this does not show that the Colemans did not receive the slips that are customarily given to recipients of certified mail notifying them that they have pieces of certified mail waiting to be claimed by them. All that it shows is that if the Colemans did indeed receive these slips, they chose not to act on them by going to the post office window and claiming their mail. Much like the presumption in the law that a letter which is sent through the mail is, in the absence of evidence to the contrary, received by the addressee, a similar presumption should operate here with respect to the notification slips informing the Colemans that they had items of certified mail waiting to be claimed by them. Indeed, when the Court considers the fact that the Colemans have not submitted any countervailing evidence in the form of an affidavit or anything else showing that they did not receive the certified mail notification slips or even that the Pelahatchie post office box to which the letters were addressed was no longer their valid mailing address,[1] the Court can only

---

1. The 1980 Assumption Agreement signed by the Colemans states their post office address as "Bx. #702, Pelahatchie, MS 39145." Ex. 1 in Supp. of Mot. for Summ.J. and/or Mot. to Dismiss. This is the same address to which the certified letters containing the Notices of Acceleration and Notice of Sale were sent. Ex. 6 in Supp. of Mot.

for Summ.J. and/or Mot. to Dismiss. Furthermore, the record contains copies of numerous letters sent over the years from FHA to the Colemans which informed them of various delinquencies in their loan repayment obligations. Ex. 4 in Supp. of Mot. for Summ.J. and/or Mot. to Dismiss. These letters were all addressed to the

presume that notification slips informing the Colemans of their certified mail actually reached the Colemans at their Pelahatchie post office box but that the Colemans chose not do anything about them in the way of claiming their certified mail.

■ The Colemans do not dispute that FHA, by posting a Notice of Sale on the bulletin board in the Rankin County Courthouse in Brandon, Mississippi and by publishing the Notice of Sale in the local Rankin County newspaper on October 28, November 4, and November 11, 1992, complied with the requirements of Miss.Code Ann. § 89–1–55 (1972) in terms of the manner in which it proceeded with their foreclosure sale. The Colemans do assert, however, that the United States has failed to submit a "certificate or other evidence" showing that the procedures set forth in 7 C.F.R. § 1955.15 were complied with in the way it conducted its foreclosure proceedings. The Colemans' understanding of the burden of production on a motion for summary judgement is backwards. It is the Colemans who in their cross-claim assert that the foreclosure proceedings were conducted unlawfully. Thus, assuming for the sake of argument that 7 C.F.R. § 1955.15 provides them with some legal right to have the requirements of that regulation complied with, the burden is upon the Colemans as the parties who are asserting a cross-claim for wrongful disclosure to come forth with specific facts showing that there is a genuine issue for trial. The Colemans have failed to assert facts explaining specifically *how* the United States has failed to comply with 7 C.F.R. § 1955.15 or the legal significance that a certificate of compliance might have with respect to this issue. Thus, as a matter of procedure, their conclusory and general allegation is insufficient to enable them to overcome a motion for summary judgment. The Court therefore dismisses the Colemans' cross-claim with prejudice.

Pelahatchie post office box. The letters specifically informed the Colemans of the repayment amounts which were past due as of various specific dates. The fact that over the years the letters show fluctuating balances in the amounts overdue and owing to the FHA, shows that the Colemans, at least until the late 1980's, were attempting to make up their delinquent payments

■ In its motion for summary judgment, the United States draws the attention of the Court to the following language from the Farm Bureau Insurance policy:

19. Mortgage Clause—This entire clause is void unless name of mortgagee or trustee in inserted on the first page of this policy in space provided under this caption—Loss or damage, if any, under this policy, (ON BUILDINGS) shall be payable to the mortgagee (or trustee), named in this policy, as interest may appear, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated ... by any foreclosure or other proceedings or notice of sale relating to the property, nor any change in the title of ownership of the property....

Farm Bureau Insurance Policy ¶ 19, attached to Compl. to Interplead and identified as Item 1 on the docket record of the Court. It is undisputed that FHA was the holder of the liens on the Colemans' property and that FHA is listed on the first page of the policy as the mortgage clause loss payee. Thus the Court finds that the $22,160.97 in insurance proceeds interpled into the registry of the Court belong to the United States and directs the Clerk of Court to pay these funds along with any accrued interest to the United States. An Order of Final Judgement finally dismissing this interpleader action will be entered along with this Opinion and Order.

SO ORDERED.

### JUDGMENT

Pursuant to Rule 58 of the Federal Rules of Civil Procedure and the Opinion and Order entered this day in this case, IT IS HEREBY ORDERED that final judgment be entered in favor of Defendant-in-Interpleader the United States of America in the amount of $22,160.97, such liability to be satisfied by the payment over to the United

even though they may have at times fallen behind in these obligations. More importantly, this record of correspondence supports the inference that the letters addressed by the FHA to the Pelahatchie post office box were ending up in the hands of the Colemans and that the Pelahatchie post office box was a valid address at which the Colemans could be actually notified.

States of the $22,160.97 interpled into the registry of the Court together with any interest thereon accrued.

IT IS ALSO ORDERED that under the terms of insurance policy No. F422136, Plaintiff-in-Interpleader Mississippi Farm Bureau Insurance Company has no further liability to any of the Defendants-in-Interpleader in addition to the $22,160.97 it has paid into the registry of the Court.

IT IS ALSO ORDERED that the cross-claim of Defendants-in-Interpleader Clifton W. and Lillian P. Coleman against Defendant-in-Interpleader United States of America is dismissed with prejudice.

IT IS ALSO ORDERED that the United States is finally and exclusively entitled to the interpled $22,160.97 representing the insurance proceeds payable under the Mississippi Farm Bureau Insurance Company policy to the United States Farmers Home Administration for the fire loss occurring on or about December 9, 1992, such entitlement barring all other claims to this interpled sum by any other interpled Defendant in this action.

IT IS ALSO ORDERED that the Clerk of Court disburse to the United States Farmers Home Administration c/o Pshon Barrett, Assistant United States Attorney, the entire interpled fund including all accrued interest.

In view of the foregoing, IT IS FINALLY ORDERED that this interpleader action be dismissed.

SO ORDERED.