**Mohammad R. KHADIVI, Plaintiff,**

v.

**JACKSON STATE UNIVERSITY, Defendant.**

**Civil Action No. 3:99–CV–162WS.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 29, 2000.

Kyle M. Sadler, Jackson, MS, for plaintiff.

Maudine Gatlin Eckford, Office of the Attorney General, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the motion of the defendant herein, Jackson State University, for summary judgment filed pursuant to Rule 56(b),[1] Federal Rules of Civil Procedure. By its motion, Jackson State University ("JSU") asks this court to dismiss this lawsuit in its entirety on the grounds that under the material undisputed facts and the applicable law, plaintiff cannot mount a prima facie case. Defendant JSU is a land grant college created under Mississippi state law by Title 37 of Miss.Code Ann. § 37–125–1. Plaintiff Mohammad R. Khadivi, an Asian who hails from the nation of Iran, is an Assistant Professor of Mathematics at JSU. Aggrieved that JSU has passed him over for promotion to the rank of Professor, Khadivi originated this lawsuit, filed under Title VII of the Civil Rights Act of 1964, § 701 et seq., Title 42 U.S.C. § 2000e et seq.[2] The defendant's

---

1. Rule 56(b) of the Federal Rules of Civil Procedure states:

 (b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

2. Title 42 U.S.C. § 2000e–2(a) states in pertinent part:

 (a) Employer practices

It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an em-

motion for summary judgment now before the court tests the sufficiency of plaintiff's evidence under the governing law. Although the plaintiff opposes the motion for summary judgment, this court is persuaded to grant it.

## I. FACTS

### A. Background

Plaintiff, a member of the Asian race and of Iranian national origin, was employed by defendant JSU effective August, 1998, as an Assistant Professor of Mathematics in JSU's Department of Mathematics, which is one of several departments in the JSU School of Science and Technology.

Prior to his employment by JSU, plaintiff's only previous employment had been that of Teaching Assistant at Georgia Institute of Technology from 1984–1988 and as an Instructor in Mathematics at Tehran University from 1984–1988 and Juni–Shapour University from 1977–1980. Thus, upon being hired by JSU, plaintiff received a promotion, since for the first time in his career, he had risen to the rank of Assistant Professor.

In the fall of 1993, plaintiff applied for a promotion from the rank of Assistant Professor to the rank of Associate Professor. Plaintiff's application was approved and he was promoted to Associate Professor, effective August, 1994.

In October of 1997, plaintiff applied for promotion from the rank of Associate Professor to the rank of Professor. By letter date June 4, 1998, JSU President James Lyons [3] notified plaintiff that his application for promotion to professor had been denied. In denying this promotion, President Lyons relied upon negative recommendations from the Mathematics Departmental Promotion Committee, School of Science and Technology Promotion Committee, and Vice President for Academic Affairs.

### B. The Faculty Handbook Requirements for Promotion

The JSU policies and procedures governing promotions in rank are set forth in the JSU Faculty Personnel Policies and Procedures, Section V. (Criteria and Standards for Promotion), Revised September 27, 1990 (hereinafter "Faculty Handbook"). Pursuant to the Faculty Handbook and practices at JSU:

a. A faculty member requests consideration for promotion by submitting an application based upon the Criteria and Standards for Promotion to their [sic] respective Departmental Chairpersons. Request for consideration of promotion in academic rank must be accompanied by documentation of the qualification;

b. A faculty member usually completes at least four years in rank before being [eligible to be] considered for promotion from Assistant Professor to Associate Professor or from Associate Professor to Professor; consequently, candidates normally do not apply for promotion before their fifth year in rank. Faculty members whose academic credentials and performance [are well beyond the norm or exceptional], or who have held academic appointments at their present rank at other institutions may be considered for promotion sooner.

c. The minimum qualifications normally expected to be met by a faculty member prior to consideration for promotion from Associate Professor to Professor are:

(1). Education: Earned doctorate appropriate to the teaching or professional field.

(2). Experience: Completion of eight years of outstanding teaching and/or other professional experience in the

---

ployee, because of such individual's race, color, religion, sex, or national origin.

3. Dr. Lyons has stepped down from his position as President of JSU. Dr. Ronald Mason has since succeeded Dr. Lyons in that position.

field, with recognition of that experience beyond the University community.

### C. The Application Trail

#### 1. The Mathematics Department Chairman

Pursuant to JSU policy, the Mathematics Department Chairperson and the Dean of the School of Science and Technology, who consult with their respective Department of School and Promotion Committees, are primarily responsible for gauging experience and educational qualifications in order to recommend faculty for promotion.

Plaintiff Khadivi submitted his application for promotion from the rank of Associate Professor to the rank of Professor to Dr. Henry Gore, Chair of the Department of Mathematics, for consideration by the Mathematics Departmental Promotion Committee. Plaintiff's resume, which was part of his application, indicated he had been promoted to Associate Professor in 1993, and not in 1994, the effective date of his promotion. Upon reviewing plaintiff's resume, Dr. Gore checked "yes" on the Departmental Committee Checklist for plaintiff, thus indicating that plaintiff had served in the rank of Associate Professor for the minimum four years based on the 1993 year. Thereafter, plaintiff's application was considered by the Mathematics Departmental Promotion Committee, School of Science and Technology Promotion Committee, Dr. Dora Washington as Vice President for Academic Affairs, and Dr. James Lyons as President of JSU.

#### 2. Mathematics Departmental Promotion Committee

Upon reviewing and evaluating plaintiff's application for promotion, the Mathematics Departmental Promotion Committee recommended that plaintiff not be promoted to Professor. The Departmental Committee found that plaintiff's academic credentials and performances in the areas of teaching, research and service did not meet the minimum qualifications normally expected to be met by a faculty member prior to consideration for promotion from Associate Professor to Professor. More specifically, the Departmental Committee gave the following reasons:

*Teaching Excellence* (since last promotion)

a. There were too few student evaluations. While student evaluations in small upper courses gave rating of good, the rating in large level courses were lower. Thus, plaintiff's teaching effectiveness was rather difficult to understand.

b. There was no evidence of academic advising.

*Research, Scholarly and Creative Activities* (since last promotion)

a. There was only one publication since the last promotion.

b. There were no research proposals for grants.

c. Plaintiff was much more productive in this area prior to the last promotion.

d. The majority of the materials submitted by plaintiff dealt with work prior to the last promotion, and should not have been included in such great volume. Some activities did not have dates indicated.

*Service and Professional Activities* (since last promotion)

a. There was no documentation for service.

b. While some committee members were aware of plaintiff's participation on departmental and school committees, there was no documentation included for service.

As earlier stated, upon the above evaluations, the Departmental Committee declined to give plaintiff a favorable recommendation for promotion.

### 3. School Science and Technology Promotion Committee

Plaintiff's application along with the above Mathematics Departmental Promotion Committee's recommendations and rationale then were forwarded to the Dean of the School of Science and Technology for consideration by the School Promotion Committee. While this Committee was weighing plaintiff's application, the Committee discovered that plaintiff had not been promoted to Associate Professor in 1993 as indicated in his resume, but in 1994; and consequently, that plaintiff did not have the minimum four (4) years in the rank of Associate Professor needed to be considered for promotion to Professor.

The School Promotion Committee thereafter recommended, too, that plaintiff not be promoted to Professor. The School Promotion Committee, like the Department Committee, also found that plaintiff's academic credentials and performance in the areas of teaching, research and service did not meet the minimum qualifications normally expected to be met by a faculty member prior to consideration for promotion from Associate Professor to Professor. The School Promotion Committee also found that plaintiff did not meet the minimum eligibility requirement for being considered for promotion since he had not served in the rank of Associate Professor for a minimum of four (4) years. The Committee further concluded that plaintiff did not qualify for an exception to this four (4) year requirement since, (a), the Committee did not adjudge his credentials and performance as "well beyond the norm or exceptional"; and (b) the Committee knew that plaintiff had not held academic appointment at the rank of Associate Professor at another institution.

In its own words, the School Promotion Committee explained its misgivings towards plaintiff's application as follows:

*Teaching Excellence* (since last promotion)

a. Supporting information regarding teaching excellence was not documented.

b. No recent SIRS evaluation, most of those in the application are for 1991, 1992, and 1993 while Plaintiff was at the previous rank of assistant professor.

c. New course developed in 1991 while at the rank of assistant professor.

d. Dr. Khadivi did not meet minimum eligibility requirement of four years in the current rank as specified in the faculty handbook. Dr. Khadivi was promoted to associate professor at the beginning of the 1994–95 academic year. Dr. Khadivi indicates in his resume that he was promoted in 1993, which was not true.

*Research, Scholarly and Creative Activities* (since last promotion)

a. Dr. Khadivi had only one publication since his last promotion.

b. Grantsmanship—no proposal submitted to any federal agency. The grants listed by plaintiff were awarded by the office of the Dean of the School of Science and Technology from a special project through the Science Consortium (funded by DOE) as start-up or seed money to help faculty establish research programs and eventually seek independent funding. This did not happen in the case of Dr. Khadivi.

*Service and Professional Activities* (since last promotion)

There was no systematic or organized candidate's participation in service activities. Therefore, it was difficult to evaluate this category.

Once the School Science and Technology Committee had finished its task, the Committee referred plaintiff's application to the Vice President for Academic Affairs.

### 4. Vice President for Academic Affairs

Dr. Dora Washington agreed with the recommendation of the Departmental and School Promotion Committee and recom-

mended to President James Lyons that plaintiff not be promoted to Professor.

### 5. President

Dr. Lyons accepted the recommendation of Dr. Washington and denied plaintiff's application for promotion to Professor, and notified plaintiff of this action by letter dated June 4, 1998.

## II. SUMMARY JUDGMENT

Summary judgment in favor of the defendant under Rule 56 of the Federal Rules of Civil Procedure is proper when there are no genuine issues of material fact and the defendant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is mandated "against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. *See also Moore v. Mississippi Valley State University*, 871 F.2d 545, 549 (5th Cir.1989).

## III. TITLE VII[4]

Plaintiff filed this action under Title VII, which makes it an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race or national origin. Title 42 U.S.C. § 2000e–2(a).

In cases involving claims of race and national origin discrimination, the court must apply the *McDonnell Douglas–Burdine* burden-shifting process. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); and *Texas Dep't of Communi-*

*ty Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). First, plaintiff must set forth a prima facie case by showing the following: (a) he was a member of a protected class; (b) he was qualified for the position applied for; (c) he suffered an adverse employment action; and (d) similarly situated employees who are not in a protected class were treated more favorably. Should plaintiff establish the prima facie case, defendant has the burden to proffer a legitimate, nondiscriminatory reason for the employment action in question. Should defendant come forth with such, plaintiff must then demonstrate that the defendant's proffered rationale for the adverse employment action was merely pretextual.

## IV. ANALYSIS

■ Plaintiff has not established a prima facie case of discrimination. Plaintiff has not shown that he was qualified for the position of Professor as outlined in the JSU Faculty Handbook. Plaintiff had not served in the rank of Associate Professor for a minimum of four (4) years. Additionally, plaintiff's credentials and performance, according to the evaluators, did not justify an exception to this four (4) years requirement because (a) he had not held any academic appointments at the rank of Associate Professor prior to his employment at JSU, and (b) plaintiff's academic credentials and performance were not well beyond the norm or exceptional. Further, in submitting their negative recommendations, the Mathematics Department Promotion Committee and the School of Science and Technology Promotion Committee both concluded that plaintiff's academic credentials and performance did not meet the minimum qualifications normally expected to be met by a faculty member prior to consideration for

---

**4.** Plaintiff acknowledges that only his Title VII claim relative to his failed promotion to full Professor is before the court. Plaintiff failed to exhaust his administrative remedies before the Equal Employment Opportunity Commission as required by *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970), to challenge any other claim of discrimination.

promotion from Associate Professor to Professor.

Plaintiff has offered no facts nor evidence whatsoever contrary to the above facts. Plaintiff merely questions whether JSU's proffered reasons are the "actual" reasons for JSU's actions.

The jurisprudence relative to the law governing summary judgment is clear: The respondent to a summary judgment motion must do more than simply rely on his complaint, or the promise that at trial he will come forward with sufficient evidence. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–61, 90 S.Ct. 1598, 1610 26 L.Ed.2d 142 (1970) (stating that summary judgment requires a party to do "more than simply rely on [an] allegation in her complaint"). Plaintiff here cannot discharge his response obligation under Rule 56 by asking the court to indulge in speculation. *See Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257 (5th Cir.1991) ("Summary judgment, to be sure, may be appropriate, '[e]ven in cases where elusive concepts such as motive or intent are at issue, ... if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.' ") (citation omitted). Accordingly, this court finds that plaintiff has not established his prima facie case of race or national origin discrimination because he has not presented proof that he was qualified for the position of Professor.

 Assuming, *arguendo,* that plaintiff has established a prima facie case in this matter, defendant has proffered legitimate, nondiscriminatory reasons for not promoting plaintiff to Professor. Pursuant to the JSU Faculty Handbook and practice, JSU denied plaintiff's application for promotion to Professor because: (1) plaintiff's academic credentials and performance did not meet the minimum qualifications normally expected to be met by a faculty member prior to consideration for promotion from the rank of Associate Professor to the rank of Professor; and (2) plaintiff was not eligible to be considered for promotion from the rank of Associate Professor to the rank of Professor. Plaintiff has not submitted any facts whatsoever to demonstrate that JSU's reasons are pretextual.

## CONCLUSION

Plaintiff here simply has not met his obligation under Rule 56, Federal Rules of Civil Procedure, to show this court that he has the requisite proof to establish a prima facie case of discrimination. While he invites this court to speculate whether defendant's proffered reasons are genuine, plaintiff offers no proof whatsoever of discriminatory animus. Accordingly, the court grants defendant's motion for summary judgment and dismisses plaintiff's lawsuit with prejudice. This court shall enter a separate judgment in accordance with the local rules.