IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 11, 2007**

Charles R. Fulbruge III
Clerk

No. 07-20201
Summary Calendar

CAROLYN MILTON

Plaintiff-Appellant

v.

JAMES NICHOLSON, SECRETARY, DEPARTMENT OF VETERANS
AFFAIRS

Defendant-Appellee

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:05-CV-3698

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Carolyn Milton appeals the district court's grant of the defendant's motion
for summary judgment. We AFFIRM.

## I. FACTS AND PROCEEDINGS

Milton suffers from depression and has received disability benefits for over
fourteen years. Her benefits were authorized by the Federal Employees'

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Compensation Act ("FECA"), and administered by the Office of Workers' Compensation Programs ("OWCP"), a division of the Department of Labor. Before becoming disabled, Milton was employed by the Department of the Navy. In 2003, Milton was referred for vocational rehabilitation. One goal of vocational rehabilitation is the FECA beneficiary's return to the workforce.

In October 2003, Milton applied for a position as a program support clerk with the Department of Veterans Affairs ("VA") medical center in Houston. Milton was interviewed for the job and disclosed her disability, explaining that she had been instructed by the Department of Labor to find employment. The VA offered Milton the position on January 20, 2004. The VA requested Milton to provide documentation from OWCP that she was fully recovered and that the position offered was suitable full-time employment. The VA received a letter from Milton's rehabilitation counselor who stated that Milton had been released to perform the job at the VA. However, after receiving the letter, a VA official contacted OWCP requesting information regarding Milton's suitability for the job. An OWCP official told him that the rehabilitation counselor had no authority to act for OWCP concerning employment determinations. According to the VA, because Milton continued to be under medical care and in receipt of workers' compensation, the Department of Labor could not provide the VA with an employment suitability letter for the clerk position. The VA's offer of employment to Milton was withdrawn on February 5, 2004. In a letter dated April 22, 2004, Jane McHam, a supervisory claims examiner at OWCP, advised Milton that OWCP did not provide workers' medical documentation to non-employers without permission. She further explained that job suitability determinations were made if a job offer was refused and such determinations were the responsibility of the claims examiner in OWCP, not a vocational rehabilitation counselor.

On April 22, 2004, Milton filed a discrimination complaint with the Equal Employment Opportunity Commission which was dismissed for lack of jurisdiction. The administrative judge concluded that Milton's claims were a collateral attack on OWCP procedures. Milton then filed suit claiming that the VA's withdrawal of her offer of employment violated the Rehabilitation Act, 29 U.S.C. § 794(d). The government moved for summary judgment on September 28, 2006 arguing that Milton's claims: (1) arose out of her misinterpretations of OWCP regulations; (2) failed to established a prima facie case of discrimination; and (3) failed to refute the VA's legitimate, nondiscriminatory reason for not hiring her, her failure to comply with OWCP procedures and regulations. Milton responded that, among other arguments, she had met a prima facie case for discrimination and that the VA had failed to satisfy their burden of producing a legitimate, nondiscriminatory reason. On January 5, 2007, the district court granted the defendant's motion for summary judgment, holding that Milton failed to meet the burden of providing evidence sufficient for a jury to conclude that the VA was actually motivated by discrimination when it withdrew its job offer.

## II. STANDARD OF REVIEW

In reviewing a grant of summary judgment by the district court, this court examines "the record under the same standards as used by the trial court." Moore v. Miss. Valley State Univ., 871 F.2d 545, 548 (5th Cir. 1989). "Affirmance of a summary judgment ruling requires that we be convinced, after an independent review of the record, that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Id. at 548–49 (internal quotations and alteration omitted). "The evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant." Minter v. Great Am. Ins. Co. of New York, 423 F.3d 460, 465 (5th Cir. 2005). To survive a summary judgment motion, the

nonmovant "need only present evidence from which a jury might return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. DISCUSSION

"The standards used to determine whether this section [of the Rehabilitation Act] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 . . . ." 29 U.S.C. § 794(d).  In a case brought under the Americans with Disabilities Act, the court applies the burden-shifting analysis from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 279 (5th Cir. 2000).

> Under this framework, a plaintiff must first make a prima facie showing of discrimination by establishing that: (1) He is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees.

Id. at 279–80.  After making this prima facie showing, the "burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." Id. at 280.  If the employer can articulate such a reason, "the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." Id.

This court assumes for the purpose of argument that Milton could establish a prima facie case of discrimination.  The next question is whether the VA has articulated a legitimate, non-discriminatory reason for its employment action.  "The defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)

(internal citation omitted). The defendant's proffered reason, that Milton failed to obtain a job suitability letter according to OWCP procedures, meets this requirement.

Milton argues that the VA's reason was merely a pretext because the offer of employment withdrawal was related to her disability, and the VA contacted the OWCP because of her disability. She further argues that the resignation of a VA human resource specialist is evidence that the VA's legitimate, non-discriminatory reason was a pretext for discrimination.

To prove pretext, it is not enough to show the defendant's proffered reasons for employment action were unpersuasive or even contrived; instead the court must accept the plaintiff's explanation of intentional discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146–47 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). However, "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." Reeves, 530 U.S. at 147 (emphasis omitted). Milton has not proven the intentional discrimination or falsity of the VA's reasons to allow a trier of fact to make such an inference. At most, the VA may have misinterpreted government regulations. An attempt to follow government regulations is not intentional discrimination, even if a misguided one. A request for information regarding Milton's suitability for employment and the resignation of a human resource specialist is not enough to support Milton's claim. Viewed in light of the VA's decision to hire Milton when it knew of her disability but only withdrew the offer after it believed she had not obtained a suitability letter according to OWCP regulations, Milton has failed to show that a reasonable jury could return a verdict for her.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.